## Case No. 12,194.

### In re SABIN.

[12 N. B. R. 142; 1 N. Y. Wkly. Dig. 101.] [1]

District Court, E. D. Michigan. 1875.

BANKRUPTCY—INCOMPLETE LIEN—STATE STATUTE.

A lien, authorized by a statute, on compliance with certain provisions concerning record and notice, is not complete until the statutory requisites are complied with; and if these are postponed until after the filing of a petition in bankruptcy, on which an adjudication follows, no lien will exist.

[For prior proceedings in this litigation, see Case No. 12,193.]

By HOVEY K. CLARKE, Register:

The register certifies—that on the 16th day of June, 1874, Johnson & Hunt tendered a deposition of Benjamin G. Johnson, one of the firm, as proof of debt due to them against the above named bankrupt's estate, and which they claimed was secured, by virtue of the statutes of the state of Michigan, by a mechanic's lien upon certain described premises belonging to said estate. The act under which the lien is claimed, after specifying the parties who may "have a lien," and the subjects to which and the conditions upon which it shall apply, declares (new compilation, section 6790) "such lien shall not attach, unless the said contractor or some one on his behalf shall make and file with the register of deeds of the county in which the lands shall lie a certificate containing a copy of the contract," etc., directing the particulars which the certificate must show, the manner of verification and recording it, to which is added a proviso "that no lien created by virtue of this act shall be binding upon the owner, part-owner, or lessee, until he shall have been notified of the filing of such lien with the register of deeds."

The proceedings under which the adjudication in bankruptcy in this case was had were commenced on the 20th day of October, 1873, at which time, as I understand the effect of the bankrupt act [of 1867 (14 Stat. 517)], and the ruling of this court, the title of the bankrupt to the premises on which the lien is claimed had passed to the assignee in bankruptcy. The proceedings to "attach" the lien under the statutes of Michigan were not commenced until the 23d day of October.

I am not referred to any fact, nor to any principle of law, which will subject the title acquired by the assignee to the lien claimed by the creditors in this case, and having declined to file the proof as a secured claim, I am requested by the claimants to certify the questions arising into court for determination by the district judge. I send herewith the proof of debt offered by the claimants.

## Case No. 12,195.

### In re SABIN.

[18 N. B. R. 151; 10 Chi. Leg. News, 364; 3 Cin. Law Bul. 625.] [1]

District Court, E. D. Michigan. 1878.

BANKRUPTCY — FUND IN HANDS OF ASSIGNEE — JURISDICTION—RESIDENCE—ADVERSE CLAIMS.

1. The district court has jurisdiction of a controversy as to the ownership of a fund in the hands or under the control of the assignee in bankruptcy, without regard to the residence of the parties in interest.

[Cited in Winter v. Swinburne, 8 Fed. 51.]

2. Where it appears that a suit to determine adverse claims as to the ownership of a fund in the hands of the bankrupt court is pending, the court will detain such fund until the rights of the parties thereto have been determined in such suit.

On the petition of James Armstrong and others, for the surrender to them of a dividend check, payable to their order. The petition set forth that petitioners were residents of the state of New York, and trustees of Edward W. Bancroft, for the benefit of his creditors, under an assignment bearing date December 29th, 1873; that on the ninth day of April, 1875, Scott, Lathrop and Hermance, predecessors of the petitioners, as trustees of the estate of the said Bancroft, proved a claim against the estate of the said bankrupt, in the sum of sixty-six thousand nine hundred and ninety-five dollars and ninety-eight cents, and that the same was allowed by the register, and placed upon the list of debts; that on the twenty-first day of May, 1875, a dividend was declared in the sum of five thousand eight hundred and twenty dollars and seventy cents, and a check therefor, payable to the order of said Scott, Lathrop and Hermance, as such trustees, was drawn by the assignee, countersigned by the register, and should have been delivered to them; that the assignee refuses to deliver said check to the petitioners, and improperly and wrongfully withholds the same, notwithstanding the request of petitioners to deliver it to them; that neither Scott, Lathrop, nor Hermance, nor the petitioners, have ever received this check, or the money represented thereby, but have forbidden the American National Bank from paying the same without their indorsement; that they have been subrogated to all the rights of the former trustees by an order made by the register, and are entitled to the said check and money represented thereby, and prayed that the said check may be declared

[1] [Reprinted from 12 N. B. R. 142, by permission. 1 N. Y. Wkly. Dig. 101, contains only a partial report.]

[1] [Reprinted from 18 N. B. R. 151, by permission. 3 Cin. Law Bul. 625, contains only a partial report.]

null and void, and a new check be issued by the assignee to the petitioners.

The answer of the assignee alleged the filing of a bill in equity by Thomas Cochran and William Barbour, as complainants, against Scott, Lathrop and Hermance and Bancroft, the petitioners, and the assignee as defendants. That said bill sets forth the filing of the proof of debt, February 9, 1874, by said Bancroft, against the estate of said Philo R. Sabin, for a claim of one hundred and seventy-two thousand three hundred and two dollars and seven cents. That on February 11, 1874, there was filed proof of another debt by Bancroft, in the sum of seventy-two thousand sixty-two dollars and fifty-eight cents, which last claim was derived by Bancroft by an assignment to him of the same from Peake, Opdyke & Co., of New York. That on November 28, 1873, in consideration of twenty-five thousand dollars paid him by Charles H. and George C. Scofield, Bancroft assigned to them any and all dividends which might be declared by the assignee, upon any claims which he had against the estate of said Sabin, or which might become payable to him by said assignee. That by said assignment, the amount which Scofield & Co. were to receive hereunder, was limited to twenty-five thousand dollars. That owing to defects in the first proof of debt filed by Bancroft, in failing to give proper credits for certain securities received by him, the said proof of debt was withdrawn, by order of the court, and leave granted to file an amended proof, and in accordance with such permission, Scofield & Co. caused a proof of debt to be perfected in the name of Scott, Lathrop and Hermance, trustees of Bancroft, for the seventy-five thousand seven hundred and fifty-two dollars which Scofield & Co. caused to be filed on April 9, 1875, in place of the one first above mentioned. That after the commencement of proceedings in bankruptcy, Bancroft became embarrassed and made a general assignment to Scott, Lathrop and Hermance; but inasmuch as the assignment to Scofield & Co. of Bancroft's claims against the estate was not an assignment of the demands themselves, but only of the right to receive dividends to a certain amount, Scofield & Co. could not formally make proof of the debt in their own name, but were obliged to have the same made in the name of the party having the legal title thereto; wherefore they did, at their own cost and charges, procure the above named amended proof to be filed. That in certain litigation over said claims, and the proof and allowance thereof, Scofield & Co. also paid out counsel fees, etc. That on June 1, 1875, a dividend was declared, and by means of a power of attorney executed by Bancroft prior to his assignment, Scofield & Co. received the dividend then payable on said claim derived from Peake, Opdyke & Co.; but as to the amount claimed for them by the trustees of Bancroft, the assignee drew a check for a dividend, payable to the order of said trustees, and delivered the same to the attorney of Scofield & Co., which was forwarded to them, and has been in their hands until their assignment to Cochran, McLean & Co., and in the latter's hands since that time. That the dividends on the claims have not paid thirteen thousand dollars, the amount remaining due. That afterwards the trustees resigned, and the petitioners in this matter were appointed in their place, and both sets of trustees have refused to indorse said check. That Scofield & Co. assigned their right to the same to Cochran, McLean & Co., who have since dissolved, and Cochran & Barbour have succeeded to their rights. That the bill prays that the dividend may be decreed to belong to the complainants. That neither Bancroft nor his trustees have any right to the dividends, except such as may be declared in excess of the twenty-five thousand dollars, and that Cochran & Barbour alone have the right to collect the same.

The assignee further alleges that the bill proceeds to pray for relief, and for a decree adjudging the dividend to the complainants, and that the check may be indorsed and delivered to them. He also avers generally his belief that the allegations of the bill are true, and that the complainants are entitled to the check; that in obedience to the order of the bankrupt court, made May 28, 1875, he delivered to Don M. Dickinson, Esq., representing Cochran, McLean & Co., a check for the amount of the dividend. He further avers that he is advised that the petitioners have entered their appearance in the chancery suit above mentioned, and that in delivering the check to said Dickinson, he acted in entire good faith, and in accordance with what he supposed and believed to be the truth upon the facts made known to him; that said chancery suit is now pending and undetermined, and an effort, as he is advised, will be had thereunder for a plenary hearing of the entire subject-matter, and that a more satisfactory determination can be had than in a summary proceeding of this character. That he believes the petitioners have no interest in the check aforesaid, or in the dividends which they represent.

[For prior proceedings in this litigation, see Cases Nos. 12,193 and 12,194.]

Henry M. Duffield, for petitioners.

Don M. Dickinson, contra.

BROWN, District Judge. This is a conflict between rival claimants to a fund still practically in the hands, or under the control of the assignee of Sabin, the petitioners being the trustees of Bancroft under a general assignment for the benefit of creditors, and the respondents, standing in the position of the assignee of such claim to the amount of twenty-five thousand dollars, by a special assign-

ment made before the general assignment to petitioners. This, in brief, is the relative position of these parties, and the question is whether the court will order the dividend paid over to the trustees of Bancroft under the general assignment, as holding the legal title thereto, or will detain it until the right of Cochran & Barbour to the same can be determined in the chancery suit, commenced by them against the assignee and the petitioners. This, of course, involves incidentally the jurisdiction of the district court, in equity, of a bill filed by citizens of New York, as complainants, against the assignee of Sabin and the petitioners, who are also citizens of New York, as defendants.

Whenever a contest arises with regard to the ownership of a fund in court, the practice of the English court of chancery is to make what is termed a "stop order" to detain the fund in favor of assignees or creditors, or other persons entitled thereto, as against any party to the suit, and, in case the right to the same is in dispute, to make such order operative until a bill can be filed to settle the right to the same. The practice is thus stated by Mr. Daniell (3 Daniell, Ch. Prac. 1797): "Any person, although not a party to the cause or proceeding in which the fund in court is standing, who has become entitled to any such fund, or to any share thereof, or to any lien or charge thereon, may apply to that branch of the court to which the cause or proceeding is attached, for an order to prevent the fund in question being paid out or otherwise dealt with, without notice to the applicant." Instances of such applications are not infrequent in the reports. Hobson v. Shearwood, 8 Beav. 486; Williams v. Symonds, 9 Beav. 523; Thorndike v. Hunt, 3 De Gex & J. 563; Wells v. Gibbs, 22 Beav. 204; Bethune v. Kennedy, 3 Beav. 462.

The case of Feistel v. King's College, 11 Beav. 254, bears a strong resemblance to the one under consideration. Feistel becoming entitled, by assignment, to a certain claim, filed a bill, obtained a fund in court and a decree for payment. Before payment to him under the decree, the assignees of one Lyon Samuel, a bankrupt, came into court and claimed that a part of the fund equitably belonged to the bankrupt, by an agreement made in 1844, and asked for an account to be taken. It was contended "that strangers to the cause had no right to intervene. That this was an attempt to alter the decree by petition, and that a stop order was not usually granted after the rights had been declared by decree." But the chancellor observed: "I quite agree that the decree cannot be altered upon petition, but here there is no attempt whatever to find fault with the decree. The case is simply this: there is a decree for payment to A B, who has assessed, or holds it in trust for C D. C D says: 'Do not part with the fund until I have an opportunity of taking proceedings to establish my right.' I think that a court has authority to do this,

and has frequently exercised it." It was ordered that the fund be not paid out, and that applicant file a bill to enforce his demand within ten days. In Stuart v. Cockerell, L. R. 8 Eq. 607, the question arose between assignees in bankruptcy and an assignee of a dividend in court. The court entertained the application of the assignee of the dividend. See, also, In re Brown's Trust, L. R. 5 Eq. 88; Lister v. Tidd, L. R. 4 Eq. 462. In Thorndike v. Hunt, 3 De Gex & J. 563, Head Justice Turner held that the application to the court should be by a bill, when parties claim adversely. I see no reason to doubt that Cochran and Barbour have pursued the proper practice, in this regard, and that a stop order should be made, provided the court has jurisdiction of the bill filed by them against the assignee and petitioners.

Aside from the question of citizenship, I find no difficulty in supporting the jurisdiction of the district court in this case. By section 4972 the jurisdiction of the district courts as courts of bankruptcy extends—3d. To the ascertainment and liquidation of liens, and other specific claims upon the assets of the bankrupt. 4th. "To the adjustment of the various priorities and conflicting interests of all parties." 5th. "To the marshaling and disposition of the different funds and assets, so as to secure the rights of all parties, and due distribution of the assets among all the creditors." 6th. "To all acts, matters and things to be done under, and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy."

More comprehensive language could scarcely be used to confer upon the district courts jurisdiction of all controversies of whatsoever name and nature, connected with the winding up and distribution of the estate of bankrupts. McLean v. Lafayette Bank [Case No. 8,885]. It is true the jurisdiction under this section is usually exercised in a summary manner; but I know of no objection to proceeding in any case by plenary suit, particularly where there are parties making adverse claims to any portion of the bankrupt's estate.

It is admitted that if this were an original suit, this court would not have jurisdiction, by reason of the parties in interest being citizens of the same state. The bill can only be supported upon the theory that it is auxiliary to the proceedings in the bankrupt court, and that cognizance of the case is necessary to prevent a failure of justice. I find no case directly in point, though there are a large number holding the general principle that when the new suit naturally grows out of, and is connected with the former one, jurisdiction may be entertained regardless of citizenship. For instance, if a judgment at law be recovered in the circuit court, the defendant may file a bill to enjoin the judgment against the representative of the original plaintiff, though he be a citizen of the same state as the defendant. Dunn v. Clarke, 8 Pet.

[33 U. S.] 1; Dunlap v. Stetson [Case No. 4,164]; St. Luke's Hospital v. Barclay [Id. 12,241]. So a creditor's bill, a cross-bill, and a bill of review, are simply continuations of the original suit, and may be sustained between citizens of the same state. Hatch v. Dorr [Id. 6,206]; Whyte v. Gibbes, 20 How. [61 U. S.] 541; Railroad Co. v. M'Chamberlain, 6 Wall. [73 U. S.] 748. In Freeman v. Howe [24 How. (65 U. S.) 450], a state court attempted to replevy from the marshal property seized by him upon a writ of attachment. The proceeding was held to be unauthorized, and the supreme court remarked by way of dictum, that the plaintiff in replevin might have obtained relief in a federal court, even if both parties were citizens of the same state. Such jurisdiction was actually exercised by the circuit court of Massachusetts, in Gibbs v. Usher [Case No. 5,387], when a bill was filed to restrain the use of the process of the court by the marshal, in a manner contrary to law. In Minnesota Co. v. St. Paul Co., 2 Wall. [69 U. S.] 609, it is said that when a bill in equity is necessary to have a construction of the orders, decrees, and acts made or done by a federal court, the bill is properly filed in such federal court, as distinguished from any state court, and it may be entertained in such federal court, even though the parties who are interested in having the construction made, would not, from want of proper citizenship, be entitled to proceed by original bill of any kind in a court of the United States.

If the property be in the hands of the receiver of the circuit court "nothing can be plainer than any litigation for its possession must take place in that court, without regard to the citizenship of the parties." The dictum in the case of Freeman v. Howe was subsequently quoted with approval in Buck v. Colbath, 3 Wall. [70 U. S.] 334. That a judgment of this court may be stayed, or impeached for fraud, by a bill in equity filed for that purpose, regardless of citizenship, was also declared in O'Brien Co. v. Brown [Case No. 10,399], and in St. Luke's Hospital v. Barclay [supra]. In Givin v. Bradlove, 2 How. [43 U. S.] 29, the marshal failed to pay over to a judgment creditor the money collected upon an execution. It was held. Mr. Justice Daniel dissenting, that the marshal might be proceeded against by the creditor, notwithstanding both parties were citizens of Mississippi. In Jones v. Andrews, 10 Wall. [17 U. S.] 327, a leading case, it was held, that a bill for an injunction to restrain proceedings in garnishment against the plaintiff's property, which proceedings had been instituted in the circuit court, and also praying the benefit of set-offs against the garnishing creditor's demand, was not an original suit, but a defensive and supplemental suit, in which the jurisdiction of the court did not depend upon the citizenship of the party, but upon the cognizance of the original case. In First Nat. Bank of Alexandria v. Turnbull, 16 Wall. [83 U. S.] 190, the sheriff of a state court had levied an execution upon property claimed to belong to citizens of other states; an issue was made in the state court to determine the title of the property, and before trial the plaintiffs in such issue removed the cause to the circuit court of the United States. The supreme court held the action to be merely auxiliary to the original action, and therefore not properly removed. See, also, Davis v. Gray, Id. 203; Sutherland v. Lake Superior Ship Canal & R. Co. [Case No. 13,643]. In Kellogg v. Russell [Id. 7,666], the marshal, acting as messenger of the district court in bankruptcy, seized certain property supposed to belong to the bankrupt, and transferred it to the assignee. A suit was brought in the state court against the marshal for such seizure, by the party who claimed the property. It was held that the marshal and the assignee might bring suit in the circuit court against the claimant and the bankrupt to set aside the transfer as fraudulent, notwithstanding the fact that the property was in possession of the assignee at the time the suit was brought, and that an injunction could be issued to restrain the further prosecution of the suit in the state court.

The principle underlying these cases is thus admirably stated by Judge MacDonald, of the district court of Indiana, in Conwell v. Whitewater Valley Canal Co. [Case No. 3,148]: "In a cause over which a national court has acquired jurisdiction solely by reason of the citizenship of the parties, if the rights and interests of third persons should become complicated with the litigation, either as to the original judgment, or any property in the custody of the court, or any abuse or misapplication of its process, and if no state court has power to guard and determine those rights and interests without a conflict of authority with the national court, the latter court will, from the necessity of the case, and to prevent a failure of justice, give such third persons a hearing, irrespective of their citizenship, so far as to protect their rights and interests relating to such judgment or property, and as to correct any abuse or misapplication of its process, and no further."

I cannot see that the case of Paine v. Caldwell [Case No. 10,674] has any bearing upon the one under consideration. In that case it was held that an assignee in bankruptcy, appointed by the district court of Maine, had no power to bring an action in that court against a citizen of Massachusetts, to recover a fraudulent preference obtained by him in the supreme court of Maine, which was paid within four months preceding the commencement of bankrupt proceedings. Service of the subpoena was made on the attorneys who acted for the defendant in obtaining this judgment, and it was argued that the respondent, having resorted to and availed himself of the courts of Maine to obtain this fraudulent judgment, continued subject to the authority of the courts of that state, including the district court in bankruptcy, and could not withdraw from the state with the fruits of his

SABIN (Case No. 12,197)        [21 Fed. Cas. page 124]

judgment, without remaining amenable to the courts in any ulterior proceedings arising from his original suit; but as the defendant had never become a party to the bankruptcy proceedings, the court denied its jurisdiction. There can be no doubt of the correctness of this opinion.

So in Christmas v. Russell, 14 Wall. [81 U. S.] 69, the bill was dismissed on the ground that it was an original proceeding, and therefore not cognizable in the federal court. See, also, Markson v. Heany [Case No. 9,098]. The case under consideration grows directly out of a dispute as to the ownership of a fund in the hands of the bankrupt court. The defendants, the original trustees of Mr. Bancroft, having proved their debts, remain subject to the jurisdiction of this court without regard to their place of residence. In re Kyler [Id. 7,956]; Phelps v. Sellick [Id. 11,079]; Watson v. Citizens' Sav. Bank [Id. 17,279]. I am not bound to anticipate that the subpoena may not be served upon them; indeed it strikes me now as a proper case for substituted service on their attorneys. I regard the suit as auxiliary to the original proceedings in bankruptcy, and that the court has jurisdiction of the case.

The claim that the complainants in this bill have a complete and adequate remedy at law was touched upon at the argument of this motion, but I prefer to consider it when formally raised upon demurrer to the bill. As at present advised, I am unwilling to say that a suit at law in a court of another state is as complete a remedy as the detention of the fund here. Boyce v. Grundy, 3 Pet. [28 U. S.] 210; Watson v. Sutherland, 5 Wall. [72 U. S.] 74; Bunce v. Gallagher [Case No. 2,133]; U. S. v. Meyers [Id. 15,844]; Hunt v. Danforth [Id. 6,887].

The petition must be denied.